United States District Court
Middle District of Pennsylvania

| | | |
|---|---|---|
| Jasmine Malseed, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Penbrook Borough, | ) | Docket No. |
| Susquehanna Township, | ) | |
| Dauphin County, | ) | |
| Officer Isaac Tritt, | ) | |
| Sergeant Aaron Osman, and | ) | |
| Ryan Lindsley, | ) | |
| | ) | |
| Defendants. | ) | |

## Complaint

Jasmine Malseed brings this action against Defendants Penbrook Borough, Susquehanna Township, Dauphin County, Officer Isaac Tritt, Sergeant Aaron Osman, Ryan Lindsley, and John and Jane Doe defendants and states as follows:

## Summary of Civil Rights Case for Unreasonable Search and Seizure, Excessive Force, and Municipal Liability

1.    The entire incident giving rise to this civil rights complaint was captured on video.

2.    In the late morning on August 10, 2021, Defendant Officers Tritt, Osman, and Lindsley nonchalantly stood for three minutes

outside of the private residence at 2704 Boas St., Harrisburg, PA 17103, where the then 19-year-old Jasmine Malseed was alone and unclothed inside her home after recently getting up and getting ready for the day. No sound could be heard from inside the home; the doors and windows were closed.

3.     Defendant Tritt repeatedly knocked on Jasmine's door. She eventually answered, half naked with a towel around her. She advised him that she did not wish to talk to the officers because she was not wearing any clothing. Jasmine began to shut her door. Defendant Tritt then violently, and without regard to the safety of the naked teenager standing in front of him, kicked in the door. The door struck Jasmine's head with enough force to send her flying backwards, splitting her forehead down the middle. She lay screaming and shaking on the floor.

4.     The Defendant Officers then broke into and entered Jasmine's home and unlawfully searched it for about fifteen minutes before leaving. The incident did not lead to any criminal charges being filed.

5.     Before he was hired by Penbrook Borough, Officer Tritt had been arrested and charged with impersonating a federal officer. He lied to a school principal that he was a CIA agent and claimed he had authority to search student records. Despite this clear disregard for the

law and people's privacy rights, Penbrook hired him as a police officer, leading to the foreseeable result of him abusing his authority to terrorize Ms. Malseed and illegally search her home.

## The Parties

6.     Plaintiff Jasmine Malseed resides in Steelton, Dauphin County, Pennsylvania, 17113.

7.     Dauphin County is a county in central Pennsylvania with offices located at 2 South Second Street, Harrisburg, PA 17101, that creates law enforcement policy and provides funding, training, prosecutorial administration, and other resources to Penbrook Police Department and Susquehanna Township Police Department.

8.     Penbrook Borough is a central Pennsylvania borough with offices located at 150 S. 28th Street, Penbrook, PA 17103, that creates law enforcement policy and provides funding, training, prosecutorial administration, and other resources to Penbrook Police Department.

9.     Susquehanna Township is a central Pennsylvania Township with offices at 1900 Lingelstown Rd., Harrisburg, PA 17110, that creates law enforcement policy and provides funding, training, prosecutorial administration, and other resources to the Susquehanna Township Police Department.

10.     Defendant Isaac Tritt has been employed by the Penbrook

Police Department from February 4, 2019, through the present. Officer Tritt was acting under color of state law at all relevant times. He is sued in his individual and official capacity.

11.    Defendant Ryan Lindsley was a Susquehanna Township police officer on August 10, 2021; he remained an officer through November of 2021, after which he became a personal trainer in Elizabethville, Pennsylvania. Officer Lindsley was acting under color of state law at all relevant times. He is sued in his individual and official capacity.

12.    Defendant Aaron Osman is a Susquehanna Township police officer who held the rank of sergeant on August 10, 2021. Sergeant Osman was acting under color of state law at all relevant times. He is sued in his individual and official capacity.

### Jury Trial Demand

13.    Ms. Malseed demands trial by jury on all issues triable by a jury.

### Jurisdiction and Venue

14.    This action arises under 42 U.S.C. § 1983.

15.    Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

16.    Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Dauphin County, Pennsylvania.

## Facts

### Defendant Officer Tritt Illegally Kicked In the Door to Ms. Malseed's Home Knowing that Doing So Would Severely Injure Her; All Officers Then Illegally Searched Her House; No Criminal Charges Were Filed

17.    In about June 2021, Plaintiff Jasmine Malseed moved into her mother's single-family home located at 2704 Boas St., Harrisburg, PA 17103. Jasmine previously was living with her father.

18.    At the time, Jasmine was 19 years old and worked at a Wendy's restaurant around the corner from her mother's home.

19.    On August 10, 2021, at around 11:48 a.m., Defendant police officers casually approached the 2704 Boas Street property, peering around the exterior in an apparent attempt to determine if anyone was home.

20.    A female crisis intervention team "co-responder" named Lydia Hoke accompanied police to the home. According to various Dauphin County government internet sites, a "Co-Responder" is a mental health professional embedded within the police department to help officers respond to an individual having a behavior health crisis.

They are also supposed to de-escalate potentially confrontational encounters and domestic cases.

21.    The 2704 Boas Street property had functional surveillance cameras that recorded sound and color video of the entire incident giving rise to this complaint.

22.    The Defendant Officers can be heard stating, "I don't know if you heard, Lydia said the cameras do work," and "the neighbors called" as they meandered around the property.

23.    The Defendant Officers and co-responder casually stood outside of the house, on and next to the front porch, for about three to four minutes. Officer Tritt knocked on the door and waited for someone to respond. The officers did not display any urgency about gaining entry to the house.



24.     Officer Tritt knocked on the front door several times, until Ms. Malseed answered, half naked with a towel around her.

25.     Their conversation was as follows:

Officer Tritt: "Hi, how ya doing?"

Ms. Malseed: "Good"

Officer Tritt: "The [Penbrook] police department wants to talk to you. Can you step out for me?"

Ms. Malseed: "No, I'm not dressed."

Officer Tritt: "What's that?"

Ms. Malseed: "I'm not dressed."

Officer Tritt: "Okay, I need you to put something on and step out."

26.     Ms. Malseed again calmly said "no" to "stepping outside" and began to close her door.

[This space intentionally left blank]

27.    Before Ms. Malseed could fully shut her door, Officer Tritt violently kicked the door in with such force that the metal door's edge knocked Ms. Malseed backwards into the room and split her forehead down the middle, causing her to bleed profusely.



28.     Officer Tritt then walked into the house. Officer Lindsley and Sergeant Osman followed behind him. As they walked across the porch and towards the door, they exchanged puzzled looks and can be heard saying "what the hell?"



29.     As Ms. Malseed lay on her floor, naked, screaming, and bleeding profusely from the gash in her forehead, the Defendant officers casually walked into the home and began looking around.



[This space intentionally left blank]

30.     Officer Tritt roughly commanded Ms. Malseed to hold still
while he grabbed her head. He later briefly held a towel (that Ms.
Malseed had been wearing to cover her naked body) over the gash on
her forehead.



31.    Officer Tritt then left Ms. Malseed on the floor crying and bleeding as he began to search Ms. Malseed's home without reason or justification.

32.    After trespassing and illegally searching Ms. Malseed's home for about seven minutes, Officer Tritt finally communicated his alleged reason for being there, stating, "Where's your mom at? So why are we getting calls about someone fighting over here? They heard crashing, screaming at each other, things banging around."

33.    Hearing no response, Officer Tritt and the other officers eventually left the home, while Ms. Malseed remained sitting on her couch, visibly traumatized, shaking and crying.



34.    None of the Defendants apologized to Ms. Malseed or showed any remorse for their clearly unconstitutional actions and intentional battery of a 19-year-old naked woman in her home.

35.    Indeed, an objective view of the video demonstrates that the officers showed disdain for Ms. Malseed.

36.    No one was arrested or charged with a crime stemming from the August 10, 2021, unreasonable search and seizure.

### No Exigent Circumstances Existed
### Justifying a Warrantless Search

37.    When the Defendant Officers arrived at Ms. Malseed's home, no sound could be heard from outside of the residence. There was no yelling or other indicia of an argument or physical altercation.

38.    Indeed, the Defendant Officers' subjective belief that there was no imminent threat to anyone inside of the home is evidenced by their relaxed meandering around the property and the front porch. They exhibited no urgency or intent to gain entrance until Ms. Malseed declined consent to enter, at which time Officer Tritt kicked the door in.

39.    When Ms. Malseed answered the door, the Defendant Officers observed that she was not distressed or injured.

40.    Officer Tritt's stated reason on the surveillance video for being at Ms. Malseed's home did not include any reference to a serious crime in progress or the need to protect a victim from a continued assault.

41.     Defendants did not arrest anyone at Ms. Malseed's home.

By definition, no search was warranted incident to an arrest.

### The Penbrook Police Department/Penbrook Borough Warrantless Search and Use of Force Policy

42.     On about August 10, 2021, Jasmin Malseed's mother,

Cindy Larry, submitted a "Right-To-Know" request under 65 Pa. Stat.

Ann. § 67.101 et. seq.

43.     In response, the Penbrook Police Department, through

Lieutenant Jesse Foltz, provided Ms. Larry with a partial copy of the

police report that Officer Tritt prepared.

44.     Lieutenant Foltz refused to provide Ms. Larry with the

narrative portion of the report or any other information, citing 65 Pa.

Stat. Ann. § 67.708, which excludes records relating to criminal

investigations. But no crime is alleged to have occurred at the subject

residence on or around August 10, 2021.

45.     On August 14, 2021, Lieutenant Foltz sent Ms. Larry a

written explanation for Defendants' actions, which states that "the

Penbrook Police Department responded to Ms. Larry's residence for a

report of an active domestic dispute that was believed to be physical in

nature. The 911 call originated from outside of [Ms. Larry's] residence."[1]

46.    Lieutenant Foltz's letter went on to state that, "Upon the arrival of the officers, they attempted to make contact at the front door. Several minutes passed without a response. Officer Tritt did hear movement inside [the] residence during the time no one answered the door. Eventually, Jasmine Malseed answered the door dressed in a towel. Officer Tritt asked Ms. Malseed to come out and speak with him. Ms. Malseed appeared to Officer Tritt to be out of breath when she answered the door."

47.    The surveillance video demonstrates that Ms. Malseed was not "out of breath" or distressed, and that no reasonable person could have construed otherwise.

48.    The letter then stated, "Officer Tritt asked Ms. Malseed to put something on to cover up and to speak with him. Ms. Malseed yelled, 'no' and proceeded to shut the door." The surveillance video demonstrates that Ms. Malseed did not raise her voice and certainly did not "yell."

---

[1] The letter does not state the time that the alleged 911 call was placed nor the time that the officers arrived at the home.

49.     Lieutenant Foltz's letter went on to justify Defendant Tritt's physical assault of Ms. Malseed and warrantless entry and search of Ms. Malseed's private residence by invoking Penbrook Police policy, stating, "This action effectively denied the officers entry into the home to investigate the dispatched domestic violence call and to ensure no one was injured." In other words, according to Lieutenant Foltz's letter, Penbrook Police policy dictates that in situations involving domestic violence calls, a citizen's mere invocation of her Fourth Amendment right to refuse entry into her home without a warrant automatically justifies a warrantless entry.

50.     Lieutenant Foltz's letter then expounded on Penbrook policy and training, stating, "it is not uncommon for victims and suspects alike to attempt to refuse entry to police in domestic violence situations." Lieutenant Foltz thus confirmed again that Penbrook policy not only permits but encourages warrantless search and seizure based upon a potential domestic violence victim's mere invocation of her Fourth Amendment rights.

51.     Lieutenant Foltz's letter indicates that Officer Tritt's conduct was in line with Penbrook training, custom, and policy.

52.     Upon information and belief, Officer Tritt was not disciplined for his actions.

53.     Lieutenant Foltz's letter is filled with misinformation and false statements, suggesting that Penbrook investigatory procedures into officer misconduct are structured to curtail disciplinary action and stifle the production of information upon request.

## Legal Claims

### Count I:
### Section 1983 Claim against Officer Tritt for Use of Excessive Force in Violation of the Fourth Amendment to the United States Constitution

54.     The allegations above are realleged.

55.     Officer Tritt kicked in Ms. Malseed's door solely because Ms. Malseed attempted to close her door and refused to consent to his unconstitutional demand that she exit her home and permit him entry.

56.     Interior surveillance video demonstrates that Ms. Malseed spoke in a normal tone of voice when she said "no" while declining consent for Officer Tritt to enter her home. Ms. Malseed's demeanor was non-combative, non-threatening, and within her constitutional rights.

57.     Interior surveillance video further demonstrates the Ms. Malseed's attempt to close her door and Officer Tritt's violent forcible entry were nearly contemporaneous.

58.     Officer Tritt intended to restrain and harm Ms. Malseed and violate her privacy when he violently kicked in her front door while she stood behind it and attempted to close it. Officer Tritt's violent act of kicking Ms. Malseed's door into her forehead, followed by his unauthorized entry and search of her home, reasonably led Ms. Malseed (and any objective person watching the surveillance video) to believe that she was not free to close her door or retreat from the police because Officer Tritt would violently restrain her again.

59.     Officer Tritt necessarily knew that the force used in accessing and searching Ms. Malseed's home by violently kicking in her door was excessive and would result in severe physical injuries.

60.     Any reasonable officer in the same circumstances would have known that kicking in Ms. Malseed's door would result in severe injury to Ms. Malseed, as it was apparent that her head and body were mere inches from the door.

61.     The force that Officer Tritt used to restrain Ms. Malseed's liberty was excessive. Ms. Malseed was an unarmed, naked teenager who was outnumbered by officers by a margin of three to one. Officer Tritt had no reason to believe she posed a threat to him or others. Nor can it be said that Ms. Malseed "resisted arrest" or "evaded arrest"— Officer Tritt had no arrest warrant and no probable cause to believe

18

Ms. Malseed had committed a crime, and he did not attempt to place Ms. Malseed under arrest before he kicked in her door.

62.     As a direct and proximate result of Officer Tritt's unlawful actions and omissions, Ms. Malseed has suffered and will continue to suffer damages including, but not limited to physical scarring, physical pain and suffering, loss of self-confidence, humiliation and embarrassment, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to dignity and personal wellbeing, and other pecuniary and non-pecuniary losses.

**Count II:**
**Section 1983 Claim against Officer Tritt for Unreasonable**
**Search and Seizure in Violation of the Fourth Amendment**
**to the United States Constitution**

63.     The allegations above are realleged.

64.     When Officer Tritt severely injured Ms. Malseed and then entered and remained in her home for approximately fifteen minutes, he unreasonably seized Ms. Malseed's person.

65.     In seizing Ms. Malseed's person, Officer Tritt acted intentionally. Specifically, he sought to prevent Ms. Malseed from retreating into her home by striking her in the face with her own door. Officer Tritt accomplished his objective when Ms. Malseed, in severe

shock and bleeding from her lacerated forehead, fell to the ground, unable to move or leave.

66.    Officer Tritt's violent act of kicking Ms. Malseed's door into her forehead, followed by his unauthorized entry and search of her home, reasonably led Ms. Malseed (and any objective person watching the surveillance video) to believe that she was not free to close her door or retreat from the police because Officer Tritt would violently restrain her again. Further, Ms. Malseed's fear and shock rendered her powerless to escape the Defendant Officers.

67.    Officer Tritt intentionally and unreasonably searched Ms. Malseed's entire home without a warrant, without probable cause, and without her consent or any other constitutional basis. There was no ongoing emergency or other exigent circumstances.

68.    As a direct result of his illegal entry, search, and seizure, Officer Tritt observed Ms. Malseed's naked body and otherwise violated Ms. Malseed's reasonable expectation of privacy in her home.

69.    As a direct and proximate result of Officer Tritt's unlawful actions and omissions, Ms. Malseed has suffered and will continue to suffer damages including, but not limited to physical scarring, physical pain and suffering, loss of self-confidence, humiliation and embarrassment, emotional pain and distress, suffering, inconvenience,

20

mental anguish, loss of enjoyment of life, injury to dignity and personal

wellbeing, and other pecuniary and non-pecuniary losses.

## Count III:
### Section 1983 Claim against Sergeant Osman and Officer Lindsley for Unreasonable Search and Seizure in Violation of the Fourth Amendment to the United States Constitution

70.     The allegations above are realleged.

71.     Sergeant Osman and Officer Lindsley understood that

Officer Tritt's actions in kicking in Ms. Malseed's door, entering her

home, and searching her home were unconstitutional and criminal, but

they failed to intervene.

72.     Sergeant Osman and Officer Lindsay illegally entered and

searched Ms. Malseed's home without a warrant or other constitutional

basis.

73.     Sergeant Osman and Officer Lindsley refused to assist Ms.

Malseed as she was crying and screaming in pain and shock. The

Officers' unauthorized entry and search of her home following Officer

Tritt's violent refusal to allow Ms. Malseed to retreat into her home

reasonably led her to believe she was not free to leave as the Officers

searched her home.

74.     As a direct result of their illegal entry, search, and seizure,

Sergeant Osman and Officer Lindsley observed Ms. Malseed's naked

body and otherwise violated Ms. Malseed's reasonable expectation of privacy in her home.

75.    As a direct and proximate result of Sergeant Osman and Officer Lindsley's unlawful actions and omissions, Ms. Malseed has suffered and will continue to suffer damages including, but not limited to physical scarring, physical pain and suffering, loss of self-confidence, humiliation and embarrassment, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to dignity and personal wellbeing, and other pecuniary and non-pecuniary losses.

### Count IV
### Section 1983 Claim against Penbrook Borough, Susquehanna Township, and Dauphin County, for Municipal Liability

76.    The allegations above are realleged.

77.    Penbrook Borough's policy and custom permit warrantless entry into private residences in response to any alleged domestic dispute when a resident refuses consent to enter, even if there is no evidence of injury or ongoing violence.

78.    According to Penbrook's policy and custom, the act of refusing an officer's entry in response to an alleged domestic dispute triggers the officer's right to enter under any means necessary.

79.     Penbrook officers are trained and taught that it is common for domestic abuse victims to refuse entry to police in domestic violence situations, and that officers are thus permitted under Penbrook policy and custom to forcibly enter a victim's home.

80.     Penbrook Borough's policy and custom effectively vitiates the Fourth Amendment's protection from unreasonable search and seizure.

81.     Dauphin County is responsible for overseeing and ratifying Penbrook Borough's training and policy.

82.     Susquehanna Township's policy directs officers to assist Penbrook Borough officers because Penbrook is understaffed; but it is customary for Susquehanna officers to refrain from intervening or correcting Penbrook officers' constitutional violations.

83.     Penbrook's deficient staffing results in its deliberate acceptance of unqualified officers and inadequate candidate screening.

84.     For example, before Penbrook hired Officer Tritt, the United States Attorney's Office for the Middle District of Pennsylvania charged Defendant Tritt with impersonating a CIA agent to enter a school and presenting the school principal with a false search warrant to illegally search and obtain student documents. Upon information

and belief, Officer Tritt pleaded guilty and entered a diversionary program.

85.    Penbrook Borough and Dauphin County knew or should have known of Officer Tritt's criminal history and his willingness to manipulate facts to conduct an illegal search.

86.    It was highly predictable that Officer Tritt would conduct searches without a warrant or other constitutional basis. Penbrook Borough and Dauphin County were deliberately indifferent to the obvious risk that Officer Tritt would commit such a constitutional violation.

### Prayer for Relief

87.    Ms. Malseed requests relief against Defendants as follows:

a.  Declare that Defendants violated Ms. Malseed's civil rights under 42 U.S.C. § 1983 to be free from unreasonable search and seizure;

b.  Award compensatory damages in amounts to be determined at trial by the jury;

c.  Award punitive damages in amounts to be determined at trial by the jury;

    d.  Award Ms. Malseed full expenses and reasonable attorney's

        fees;

    e.  Award Ms. Malseed prejudgment interest; and

    f.  Award such further relief as is deemed appropriate.


Date: August 10, 2023            Respectfully submitted,


                           /s/ Joseph P. Guzzardo
                           Joseph P. Guzzardo
                           Guzzardo & Associates LLC
                           121 S. Broad Street, Ste. 1600
                           Philadelphia, PA 19107
                           Telephone: (205) 718-6691
                           jguzzardo@guzzardolaw.com

                           Johson and Webbert LLP
                           1 Bowdoin Mill Island #300
                           Topsham, ME 04086
                           Telephone: (207) 623-5110
                           jguzzardo@work.law

                           Braden A. Beard
                           Sarah K. Austin
                           Johnson & Webbert, LLP
                           1 Bowdoin Mill Island, Ste. 300
                           Topsham, ME 04086
                           Telephone: (207) 623-5110
                           bbeard@work.law
                           saustin@work.law
                           *Pro Hac Vice Motions Forthcoming*

                           *Attorneys for Plaintiff*