United States District Court
Middle District of Pennsylvania

| | | |
|---|---|---|
| Jasmine Malseed, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Penbrook Borough, | ) | Docket No. 1:23-cv-01329-CCC |
| Susquehanna Township, | ) | |
| Officer Isaac Tritt, | ) | |
| Sergeant Aaron Osman, and | ) | |
| Ryan Lindsley, | ) | |
| | ) | |
| Defendants. | ) | |

## Amended Complaint

Jasmine Malseed brings this action against Defendants Penbrook Borough, Susquehanna Township, Officer Isaac Tritt, Sergeant Aaron Osman, and Ryan Lindsley, and states as follows:

### Summary of Civil Rights Case for Unreasonable Search and Seizure, Excessive Force, and Municipal Liability

1.     The entire incident giving rise to this civil rights complaint was captured on video.

2.     In the late morning on August 10, 2021, Defendant Officers Tritt, Osman, and Lindsley nonchalantly stood for two and a half minutes outside of the private residence at 2704 Boas St., Harrisburg, PA 17103, where the

1

then 19-year-old Jasmine Malseed was alone and unclothed inside her home. No sound could be heard from inside the home, other than a dog barking; the doors and windows were closed.

3.      Defendant Tritt repeatedly knocked on Jasmine's door. She eventually answered, half naked with a towel around her. She calmly advised him that she did not wish to talk to the officers because she was not wearing any clothing. Jasmine began to shut her door. Defendant Tritt then violently, and without regard to the safety of the naked teenager standing in front of him, kicked in the door. The door struck Jasmine's head with enough force to send her flying backwards, splitting her forehead down the middle. She lay screaming and shaking on the floor.

4.      The Defendant Officers then broke into and entered Jasmine's home and unlawfully searched it for about fifteen minutes before leaving. The incident did not lead to any criminal charges being filed.

5.      Before he was hired by Penbrook Borough, Officer Tritt had been arrested and charged with impersonating a federal officer. He lied to a school principal that he was a CIA agent and claimed he had authority to search student records. Despite this clear disregard for the law and people's privacy rights, Penbrook hired him as a police officer, leading to the foreseeable result of him abusing his authority to terrorize Ms. Malseed and illegally search her home.

## The Parties

6.     Plaintiff Jasmine Malseed resides in Steelton, Dauphin County, Pennsylvania, 17113.

7.     Penbrook Borough is a central Pennsylvania borough with offices located at 150 S. 28th Street, Penbrook, PA 17103, that creates law enforcement policy and provides funding, training, prosecutorial administration, and other resources to Penbrook Police Department.

8.     Susquehanna Township is a central Pennsylvania Township with offices at 1900 Lingelstown Rd., Harrisburg, PA 17110, that creates law enforcement policy and provides funding, training, prosecutorial administration, and other resources to the Susquehanna Township Police Department.

9.     Defendant Isaac Tritt has been employed by the Penbrook Police Department from February 4, 2019, through the present. Officer Tritt was acting under color of state law at all relevant times. He is sued in his individual and official capacity.

10.     Defendant Ryan Lindsley was a Susquehanna Township police officer on August 10, 2021; he remained an officer through November of 2021, after which he became a personal trainer in Elizabethville, Pennsylvania. Officer Lindsley was acting under color of state law at all relevant times. He is sued in his individual and official capacity.

11.     Defendant Aaron Osman is a Susquehanna Township police officer who held the rank of sergeant on August 10, 2021. Sergeant Osman was acting under color of state law at all relevant times. He is sued in his individual and official capacity.

## Jury Trial Demand

12.     Ms. Malseed demands trial by jury on all issues triable by a jury.

## Jurisdiction and Venue

13.     This action arises under 42 U.S.C. § 1983.

14.     Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

15.     Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Dauphin County, Pennsylvania.

## Facts

### Defendant Officer Tritt Illegally Kicked In the Door to Ms. Malseed's Home Knowing That Doing So Would Severely Injure Her; All Officers Then Illegally Searched Her House; No Criminal Charges Were Filed

16.     In about June 2021, Plaintiff Jasmine Malseed moved into her mother's single-family home located at 2704 Boas St., Harrisburg, PA 17103. Jasmine previously was living with her father.

4

17.     At the time, Jasmine was 19 years old and worked at a Wendy's restaurant around the corner from her mother's home.

18.     On August 10, 2021, at around 11:23 a.m., Defendant police officers casually approached the 2704 Boas Street property, peering around the exterior in an apparent attempt to determine if anyone was home.

19.     A female crisis intervention team "co-responder" named Lydia Hoke accompanied police to the home. According to various Dauphin County government internet sites, a "Co-Responder" is a mental health professional embedded within the police department to help officers respond to an individual having a behavior health crisis. They are also supposed to de-escalate potentially confrontational encounters and domestic cases.

20.     The 2704 Boas Street property had functional surveillance cameras that recorded sound and color video of the entire incident giving rise to this complaint.

21.     The Defendant Officers can be heard stating, "I don't know if you heard, Lydia said the cameras do work," as they meandered around the property.

22.     The Defendant Officers and co-responder casually stood outside of the house, on and next to the front porch, for about two and a half minutes. Officer Tritt knocked on the door and waited for someone to respond. The officers did not display any urgency about gaining entry to the house.

5



23.     Officer Tritt knocked on the front door several times, until Ms.

Malseed answered, half naked with a towel around her.

24.     Their conversation was as follows:

Officer Lindsley: "Hi."

Sergeant Osman: "How ya doing?"

Ms. Malseed: "Good"

Officer Lindsley: "Penbrook, the police department in Penbrook wants
to talk to you for a minute."

Officer Tritt: "Can you step out for me?"

Ms. Malseed: "No, I'm not dressed."

Officer Tritt: "What's that?"

Ms. Malseed: "I'm not dressed."

Officer Tritt (raising his voice): "Okay, I need you to put something on and step out."

25.     Ms. Malseed again calmly said "no" to "stepping outside" and began to close her door.

26.     Within one second, before Ms. Malseed could fully shut her door, Officer Tritt violently kicked the door in with such force that the metal door's edge knocked Ms. Malseed backwards into the room and split her forehead down the middle, causing her to bleed profusely.



27.    Officer Tritt then walked into the house. Officer Lindsley and Sergeant Osman followed behind him. As they walked across the porch and towards the door, they exchanged puzzled looks and can be heard saying "Oh! Here we go," and "Okay!"



28.    As Ms. Malseed lay on her floor, naked, screaming, and bleeding profusely from the gash in her forehead, the Defendant officers casually walked into the home and began looking around.



29.     Officer Tritt roughly commanded Ms. Malseed to "stop" while he grabbed her head. He later briefly held a towel (that Ms. Malseed had been wearing to cover her naked body) over the gash on her forehead.



30.     Officer Tritt spoke into his radio, stating that Ms. Malseed had been injured because "she was grazed at the door whenever she tried to keep us out of the house."

31.     Meanwhile, Sergeant Osman and Officer Lindsley walked through the living room and into the kitchen. They stood there for about a minute. Sergeant Osman stated, "I'm not sure I would have done that." Officer Lindsley responded, "No, I'm not sure I would have done that." Sergeant Osman looked at Officer Lindsley and smiled, apparently suppressing a laugh.

32.     Officer Tritt and Officer Lindsley then left Ms. Malseed on the floor crying and bleeding and searched her home without reason or justification. After trespassing and illegally searching Ms. Malseed's home for about six minutes, Officer Tritt finally communicated his alleged reason for being there, stating, "Where's your mom at? So why are we getting calls about someone fighting over here? They heard crashing, they heard people screaming at each other, things banging around."

33.     Hearing no response, Officer Tritt and the other officers eventually left the home, leaving Ms. Malseed sitting on her couch, visibly traumatized, shaking and crying.



34.     None of the Defendants apologized to Ms. Malseed or showed any

remorse for their clearly unconstitutional actions and intentional battery of a

19-year-old naked woman in her home.

35.     Indeed, an objective view of the video demonstrates that the

officers showed disdain for Ms. Malseed.

36.     No one was arrested or charged with a crime stemming from the

August 10, 2021, unreasonable search and seizure.

**No Exigent Circumstances Existed**
**Justifying a Warrantless Search**

37.     The Defendant Officers went to Ms. Malseed's home in response

to a 911 call from a neighbor who reported the following: "There is a ton of

banging happening over there. I've heard the girl screaming 'stop' several

times. There's fighting. I don't know if it's the mother or the daughter

fighting with a guy. And you can probably hear it outside. I'm just hearing it

through my walls, like it's shaking my house. When they slam things and then they'll stop for a couple minutes and then… I've heard that several times. A girl screaming 'stop.'"

38.  When the Defendant Officers arrived at Ms. Malseed's home, there was no indication that any crime was in progress or that anyone inside the home was being harmed. No sound could be heard from outside of the residence other than a dog barking. There was no yelling or other indicia of an argument or physical altercation.

39.  Indeed, the Defendant Officers' subjective belief that there was no imminent threat to anyone inside the home is evidenced by their relaxed meandering around the property and the front porch. They exhibited no urgency or intent to gain entry until Ms. Malseed declined consent to enter, at which time Officer Tritt immediately kicked the door in.

40.  When Ms. Malseed answered the door, the Defendant Officers observed that she was not distressed or injured. The Defendant Officers had no reason to believe that Ms. Malseed was a perpetrator or victim of continued assault.

41.  Officer Tritt's stated reason on the surveillance video for being at Ms. Malseed's home did not include any reference to a serious crime in progress or the need to protect a victim from a continued assault.

42.     Defendants did not arrest anyone at Ms. Malseed's home. By definition, no search was warranted incident to an arrest.

### The Penbrook Police Department/Penbrook Borough
### Warrantless Search and Use of Force Policy

43.     On about August 10, 2021, Jasmin Malseed's mother, Cindy Larry, submitted a "Right-To-Know" request under 65 Pa. Stat. Ann. § 67.101 et. seq. She also made an oral complaint to Penbrook Police Department about the Defendant Officers' conduct on August 10, 2021.

44.     On August 10, 2021, the Mayor of Penbrook Borough, John McDonald, contacted Ms. Malseed's mother and promised to contact the Chief of Police and start an immediate investigation. Penbrook Police Department Lieutenant Jesse Foltz began investigating Ms. Larry's complaint.

45.     Lieutenant Foltz also responded to Ms. Larry's Right-to-Know request by providing her with a partial copy of the police report that Officer Tritt prepared. He refused to provide Ms. Larry with the narrative portion of the report or any other information, citing 65 Pa. Stat. Ann. § 67.708, which excludes records relating to criminal investigations. But Lieutenant Foltz's own notes of investigation admit that "it is unknown if a crime was committed against anyone inside the home related to the initial dispatch" on August 10, 2021.

14

46.     On August 13, Lieutenant Foltz spoke with Mayor McDonald and the Chief of Police regarding his investigation into Ms. Larry's complaint.

47.     On August 14, 2021, at the direction of the Mayor and Chief of Police, Lieutenant Foltz sent Ms. Larry a written explanation for Defendants' actions, which states that "the Penbrook Police Department responded to Ms. Larry's residence for a report of an active domestic dispute that was believed to be physical in nature. The 911 call originated from outside of [Ms. Larry's] residence."

48.     Lieutenant Foltz's letter went on to state that, "Upon the arrival of the officers, they attempted to make contact at the front door. Several minutes passed without a response. Officer Tritt did hear movement inside [the] residence during the time no one answered the door. Eventually, Jasmine Malseed answered the door dressed in a towel. Officer Tritt asked Ms. Malseed to come out and speak with him. Ms. Malseed appeared to Officer Tritt to be out of breath when she answered the door." The surveillance video demonstrates that Ms. Malseed was not "out of breath" or distressed, and that no reasonable person could have construed otherwise.

49.     The letter then stated, "Officer Tritt asked Ms. Malseed to put something on to cover up and to speak with him. Ms. Malseed yelled, 'no' and proceeded to shut the door." The surveillance video demonstrates that Ms. Malseed did not raise her voice and certainly did not "yell."

15

50.    The misinformation and false statements in Lieutenant Foltz's letter suggest that Penbrook investigatory procedures into officer misconduct are structured to curtail disciplinary action and stifle the production of information requested by concerned citizens.

51.    Lieutenant Foltz's letter went on to justify Defendant Tritt's physical assault of Ms. Malseed and warrantless entry and search of Ms. Malseed's private residence by invoking Penbrook Police policy, stating, "This action effectively denied the officers entry into the home to investigate the dispatched domestic violence call and to ensure no one was injured." In other words, according to Lieutenant Foltz's letter, Penbrook Police policy dictates that in situations involving domestic violence calls, a citizen's mere invocation of her Fourth Amendment right to refuse entry into her home without a warrant automatically justifies a warrantless entry.

52.    Lieutenant Foltz's letter then expounded on Penbrook policy and training, stating, "it is not uncommon for victims and suspects alike to attempt to refuse entry to police in domestic violence situations." Lieutenant Foltz thus confirmed again that Penbrook policy not only permits but encourages warrantless search and seizure based upon a potential domestic violence victim's mere invocation of her Fourth Amendment rights.

53.    Lieutenant Foltz's letter indicates that Officer Tritt's conduct was in line with Penbrook training, custom, and policy.

54.     Indeed, this was not the first time Officer Tritt had forced entry into Ms. Malseed's home and unreasonably seized her without any evidence of an ongoing assault or other crime.

55.     On March 31, 2021, Officer Tritt and two Susquehanna Township officers responded to a reported domestic dispute at Ms. Malseed's home. Upon arrival, the officers announced their presence for several minutes and heard no response. A neighbor reported that someone could be heard walking inside, and that one of the parties to the domestic dispute had left prior to police arrival. There was no evidence of any ongoing assault or crime. But Officer Tritt forced entry into Ms. Malseed's home anyway. The Susquehanna Township officers followed Officer Tritt into the house.

56.     According to Officer Tritt's police reports, Ms. Malseed showed herself when the officers walked upstairs. When she took a step away from the officers toward the interior of her bedroom, the officers held her "at taser and gunpoint" while Officer Tritt gave commands for her to walk backwards to the sound of his voice. Officer Tritt then took her cell phone and put her in handcuffs. Officer Tritt's own police report states that he took these actions in part because Ms. Malseed had "refused to answer the door for [police]." Thus, Officer Tritt's own police report indicates that under Penbrook policies, refusing to consent to a warrantless search of one's home automatically results in a warrantless seizure.

17

57.    No one else was in the home at the time. Ms. Malseed explained she had nothing to do with the reported domestic dispute and identified the individuals who had been involved. Ms. Malseed's mother also confirmed by phone that Ms. Malseed "had nothing to do with this event." But Officer Tritt refused to immediately release Ms. Malseed.

58.    Eventually, Ms. Malseed was released, and no charges were filed against anyone in connection with the reported domestic dispute on March 31, 2021.

59.    Throughout the unreasonable search and seizure on March 31, 2021, the Susquehanna Township officers followed Officer Tritt's orders and joined in his unconstitutional conduct. They made no attempt to intervene or stop the unconstitutional conduct.

60.    Officer Tritt was not disciplined for his actions in connection with the March 31, 2021 search and seizure or the August 10, 2021 search and seizure, even though Officer Tritt had previously been disciplined for much more minor conduct—"running a red light without sirens" and "aggressively" pursuing a motorist for a minor speeding infraction that did not result in injury.

61.    Lieutenant Foltz concluded his investigation into Ms. Larry's oral complaint by finding that Officer Tritt's decision to force entry into Ms. Malseed's home "was legally justified based upon exigent circumstances,"

"the injury to Ms. Malseed was not intentional," and "Officer Tritt's actions did not violate the constitution or law." In other words, Lieutenant Foltz reviewed and approved of Officer Tritt's decisions and the bases for them.

62.    Throughout his investigation, Lieutenant Foltz was reporting to and acting at the direction of the Mayor and Chief of Police. The Mayor and the Chief of Police are Penbrook's final municipal policymakers in the areas of supervising subordinate officers and answering questions from the public about the Police Department's functions or activities. Thus, Lieutenant Foltz was acting pursuant to final policymaking authority that was delegated to him by the Mayor and Chief of Police. To the extent such authority was not delegated, the Mayor and Chief of Police reviewed and approved of Lieutenant Foltz's conclusions.

## Legal Claims

### Count I:
### Section 1983 Claim against Officer Tritt for Use of Excessive Force and Unreasonable Search and Seizure in Violation of the Fourth Amendment to the United States Constitution

63.    The allegations above are realleged.

64.    Officer Tritt kicked in Ms. Malseed's door solely because Ms. Malseed attempted to close her door and refused to consent to his unconstitutional demand that she exit her home and permit him entry.

19

65.     Interior surveillance video demonstrates that Ms. Malseed spoke in a normal tone of voice when she said "no" while declining consent for Officer Tritt to enter her home. Ms. Malseed's demeanor was non-combative, non-threatening, and within her constitutional rights.

66.     Interior surveillance video further demonstrates Ms. Malseed's attempt to close her door and Officer Tritt's violent forcible entry were nearly contemporaneous.

67.     Officer Tritt intended to restrain and harm Ms. Malseed and violate her privacy when he violently kicked in her front door while she stood behind it and attempted to close it. Officer Tritt's violent act of kicking Ms. Malseed's door into her forehead, followed by his unauthorized entry and search of her home, reasonably led Ms. Malseed (and any objective person watching the surveillance video) to believe that she was not free to close her door or retreat from the police because Officer Tritt would violently restrain her again. Further, Ms. Malseed's fear and shock rendered her powerless to escape the Defendant Officers.

68.     Officer Tritt necessarily knew that the force used in accessing and searching Ms. Malseed's home by violently kicking in her door was excessive and would result in serious physical injury.

69.     Any reasonable officer in the same circumstances would have known that kicking in Ms. Malseed's door would result in severe injury to Ms.

20

Malseed, as it was apparent that her head and body were mere inches from the door.

70.     The force that Officer Tritt used to restrain Ms. Malseed's liberty was excessive. Ms. Malseed was an unarmed, naked teenager who was outnumbered by officers by a margin of three to one. Officer Tritt had no reason to believe she posed a threat to him or others. Nor can it be said that Ms. Malseed "resisted arrest" or "evaded arrest"—Officer Tritt had no arrest warrant and no probable cause to believe Ms. Malseed had committed a crime, and he did not attempt to place Ms. Malseed under arrest before he kicked in her door.

71.     Further, when Officer Tritt severely injured Ms. Malseed and then entered and remained in her home for approximately fifteen minutes, he unreasonably seized Ms. Malseed's person.

72.     In seizing Ms. Malseed's person, Officer Tritt acted intentionally. Specifically, he sought to prevent Ms. Malseed from retreating into her home by striking her in the face with her own door. Officer Tritt accomplished his objective when Ms. Malseed, in severe shock and bleeding from her lacerated forehead, fell to the ground, unable to move or leave.

73.     Officer Tritt intentionally and unreasonably searched Ms. Malseed's entire home without a warrant, without probable cause, and

without her consent or any other constitutional basis. There was no ongoing emergency or other exigent circumstances.

74. As a direct result of his illegal entry, search, and seizure, Officer Tritt observed Ms. Malseed's naked body and otherwise violated Ms. Malseed's reasonable expectation of privacy in her home.

75. As a direct and proximate result of Officer Tritt's unlawful actions and omissions, Ms. Malseed has suffered and will continue to suffer damages including, but not limited to, physical pain and suffering, physical scarring, loss of self-confidence due to physical scarring, humiliation and embarrassment, emotional pain and distress, inconvenience, mental anguish, injury to dignity and personal wellbeing, and economic damages for lost wages and other pecuniary losses.

## Prayer for Relief

76. Ms. Malseed requests relief against Defendant Officer Tritt as follows:

a. Declare that Defendant violated Ms. Malseed's civil rights under 42 U.S.C. § 1983 to be free from unreasonable search and seizure;

b. Award compensatory and economic damages in amounts to be determined at trial by the jury;

c. Award punitive damages in amounts to be determined at trial by the jury;

d.  Award Ms. Malseed full expenses and reasonable attorney's fees;

e.  Award Ms. Malseed prejudgment interest; and

f.  Award such further relief as is deemed appropriate.

## Count II:
### Section 1983 Claim against Sergeant Osman and Officer Lindsley for Unreasonable Search and Seizure in Violation of the Fourth Amendment to the United States Constitution

77.  The allegations above are realleged.

78.  Sergeant Osman and Officer Lindsley understood that Officer Tritt's actions in kicking in Ms. Malseed's door, entering her home, and searching her home were unconstitutional and criminal, but they failed to intervene.

79.  Sergeant Osman and Officer Lindsley illegally entered and searched Ms. Malseed's home without a warrant or other constitutional basis.

80.  Sergeant Osman and Officer Lindsley refused to assist Ms. Malseed as she was crying and screaming in pain and shock. The Officers' unauthorized entry and search of her home following Officer Tritt's violent refusal to allow Ms. Malseed to retreat into her home reasonably led her to believe she was not free to leave as the Officers searched her home.

81.  As a direct result of their illegal entry, search, and seizure, Sergeant Osman and Officer Lindsley observed Ms. Malseed's naked body

and otherwise violated Ms. Malseed's reasonable expectation of privacy in her home.

82.     As a direct and proximate result of Sergeant Osman and Officer Lindsley's unlawful actions and omissions, Ms. Malseed has suffered and will continue to suffer damages including, but not limited to, physical pain and suffering, physical scarring, loss of self-confidence due to physical scarring, humiliation and embarrassment, emotional pain and distress, inconvenience, mental anguish, injury to dignity and personal wellbeing, and economic damages for lost wages and other pecuniary losses.

## Prayer for Relief

83.     Ms. Malseed requests relief against Defendants Sergeant Osman and Officer Lindsley as follows:

  a.  Declare that Defendants violated Ms. Malseed's civil rights under
      42 U.S.C. § 1983 to be free from unreasonable search and seizure;

  b.  Award compensatory and economic damages in amounts to be
      determined at trial by the jury;

  c.  Award punitive damages in amounts to be determined at trial by the
      jury;

  d.  Award Ms. Malseed full expenses and reasonable attorney's fees;

  e.  Award Ms. Malseed prejudgment interest; and

  f.  Award such further relief as is deemed appropriate.

**Count III**
**Section 1983 Claim against Penbrook Borough and**
**Susquehanna Township for Municipal Liability**

84.    The allegations above are realleged.

85.    Penbrook Borough ratified Officer Tritt's excessive force and

unreasonable search and seizure on August 10, 2021.

86.    Penbrook Borough's policy and custom permit warrantless entry

into private residences and seizure of anyone inside in response to any

alleged domestic dispute when a resident refuses consent to enter, even if

there is no evidence of injury or ongoing violence.

87.    According to Penbrook's policy and custom, the act of refusing an

officer's entry in response to an alleged domestic dispute triggers the officer's

right to enter under any means necessary.

88.    Penbrook officers are trained and taught that it is common for

domestic abuse victims to refuse entry to police in domestic violence

situations, and that officers are thus permitted under Penbrook policy and

custom to forcibly enter a victim's home.

89.    Penbrook Borough's policy and custom effectively vitiates the

Fourth Amendment's protection from unreasonable search and seizure.

90.    Susquehanna Township's policy directs officers to assist

Penbrook Borough officers because Penbrook is understaffed; but it is

customary for Susquehanna officers to refrain from intervening or correcting Penbrook officers' constitutional violations.

91.     Penbrook's deficient staffing results in its deliberate acceptance of unqualified officers and inadequate candidate screening.

92.     For example, before Penbrook hired Officer Tritt, the United States Attorney's Office for the Middle District of Pennsylvania charged Defendant Tritt with impersonating a CIA agent to enter a school and presenting the school principal with a false search warrant to illegally search and obtain student documents. Officer Tritt accepted responsibility for the crime and entered a diversionary program.

93.     Penbrook Borough knew of Officer Tritt's criminal history and knew or should have known of his willingness to manipulate facts to conduct an illegal search.

94.     It was highly predictable that Officer Tritt would conduct searches without a warrant or other constitutional basis. Penbrook Borough was deliberately indifferent to the obvious risk that Officer Tritt would commit such a constitutional violation.

95.     Penbrook Borough also knew that Officer Tritt had repeatedly been dishonest about his criminal history. In 2017, Officer Tritt applied to a police academy but concealed his record of impersonating a CIA agent. His application was rejected because of his dishonesty.

26

96.     In 2018, after enrolling in a different police academy, Officer Tritt applied to Penbrook Borough Police Department. In support of his application, Officer Tritt wrote a personal statement claiming that his experience being arrested for impersonating a law enforcement official inspired him to become a police officer. Penbrook Borough knew Officer Tritt had concealed the same criminal history in connection with his police academy application just one year earlier.

97.     During Officer Tritt's 2018 application process, Penbrook Borough discovered two more incidents of dishonesty regarding past crimes or illegal acts. Yet Penbrook Borough proceeded to hire him as a police officer.

98.     Further, in connection with his 2018 application to serve as a police officer for Penbrook Borough, Officer Tritt underwent psychological testing. His test results reveal clinically significant scores in the category of "lying," which indicates he was not honest and straightforward during the testing.

99.     Penbrook Borough knew or should have known that Officer Tritt did not have the integrity of character required for faithful execution of his duties as a police officer. By hiring him, Penbrook Borough was deliberately indifferent to the risk that he would commit unlawful acts in the performance of his duties as a police officer.

100.   As a direct and proximate result of the unlawful actions and omissions that were ratified by Penbrook Borough, as a direct and proximate result of Penbrook Borough and Susquehanna Township's customs or policies, and as a direct and proximate result of Penbrook Borough's deliberately indifferent decision to hire Officer Tritt, Ms. Malseed has suffered and will continue to suffer damages including, but not limited to, physical pain and suffering, physical scarring, loss of self-confidence due to physical scarring, humiliation and embarrassment, emotional pain and distress, inconvenience, mental anguish, injury to dignity and personal wellbeing, and economic damages for lost wages and other pecuniary losses.

### Prayer for Relief

101.   Ms. Malseed requests relief against Defendants Penbrook Borough and Susquehanna Township as follows:

a. Declare that Defendants Penbrook Borough and Susquehanna Township violated Ms. Malseed's civil rights under 42 U.S.C. § 1983 to be free from unreasonable search and seizure;

b. Award compensatory and economic damages in amounts to be determined at trial by the jury;

c. Award Ms. Malseed full expenses and reasonable attorney's fees;

d. Award Ms. Malseed prejudgment interest; and

e. Award such further relief as is deemed appropriate.

Date: April 8, 2024                    Respectfully submitted,


*/s/ Joseph P. Guzzardo*
Joseph P. Guzzardo
Guzzardo & Associates LLC
121 S. Broad Street, Ste. 1600
Philadelphia, PA 19107
Telephone: (205) 718-6691
jguzzardo@guzzardolaw.com

Johson and Webbert LLP
1 Bowdoin Mill Island #300
Topsham, ME 04086
Telephone: (207) 623-5110
jguzzardo@work.law

Braden A. Beard
Sarah K. Austin
Johnson & Webbert, LLP
1 Bowdoin Mill Island, Ste. 300
Topsham, ME 04086
Telephone: (207) 623-5110
bbeard@work.law
saustin@work.law

*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on April 8, 2024, I electronically filed this filing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Date: April 8, 2024

*/s/ Joseph P. Guzzardo*
Joseph P. Guzzardo
Guzzardo & Associates LLC
121 S. Broad Street, Ste. 1600
Philadelphia, PA 19107
Telephone: (205) 718-6691
jguzzardo@guzzardolaw.com

Johson and Webbert LLP
1 Bowdoin Mill Island #300
Topsham, ME 04086
Telephone: (207) 623-5110
jguzzardo@work.law